[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE DATED APRIL 28, 1999
The plaintiff has sued the Stamford Hospital, its employees and agents as well as two private physicians, alleging negligence in the interpretation of pap smears. The plaintiff claims that as a result of the defendants negligence, she had to undergo a radical hysterectomy in 1996 due to invasive cervical cancer.
The defendant, Stamford Hospital's, Motion to Strike is addressed to the plaintiff's December 17, 1998 amended complaint. The Motion to Strike is directed at the Second Count, claiming that it "fails to allege a legally cognizable claim for Lack of Informed Consent," the Fourth Count, claiming that it "fails to allege facts which state a cause of action under Connecticut Unfair Trade Practices Act (CUTPA)," and the Fifth Count, claiming that it "fails to allege a legally cognizable claim for Recklessness." The parties briefed the issues and appeared for oral argument. At oral argument, the plaintiff withdrew her opposition to the Motion to Strike on the grounds that the defendant hospital failed to specify the grounds of insufficiency in the Motion itself, but instead included the grounds in the supporting memorandum.
I. Second Count alleging Lack of Informed Consent.
The First Count of the December 17, 1998 amended complaint is labeled: "Negligence as to Stamford Hospital." The Second Count is labeled: "Breach of Fiduciary Duty against Stamford Hospital." The First Count, is incorporated in its entirety in the Second Count. Seven additional paragraphs have been alleged in the Second Count. The defendant's Motion to Strike is not addressed to the First Count. The defendant characterizes the Second Count as sounding in lack of informed consent and cites the following from paragraph 24: "At no time did the Defendant, Stamford Hospital or its agents, servants and/or employees inform the Plaintiff of the failure rate in interpreting pap smears nor the risk, benefits and alternatives to the test, including the CT Page 1503 possibility of having the interpretations performed by another healthcare provider either originally or for a second opinion." The plaintiff, on the other hand, claims that the Second Count sounds in Breach of Fiduciary Duty and not informed consent. Each party has only briefed its view of the Second Count, not the opposition's view.
As such, this court has not been provided with sufficient authority to determine the following legal issues: (1) Can there be a fiduciary relationship between a physician and a patient? (2) Can there be a fiduciary relationship between a hospital and a patient? (3) Can there be a fiduciary relationship between a hospital staff member, who is not a private physician, and a patient? (4) Did the amended complaint allege sufficient facts upon which the issue of the existence of a fiduciary duty can be addressed in a Motion to Strike? (5) Is there a duty by any person or entity to obtain the plaintiff's informed consent as a result of a hospital administered lab test? (6) Is there a duty by a hospital and its employees and agents by a private physician to obtain the plaintiff's informed consent when the pap smear sample was taken by a private physician? (7) Is a pap smear a "procedure" sufficient for the application of the doctrine of informed consent?
In addition to these questions, the court notes that on April 8, 1998 a Memorandum of Decision was issued on a Motion to Strike filed by the Stamford Hospital as to the Second, Fourth and Fifth Counts of the original complaint. This occurred prior to the transfer of this case to the complex civil litigation docket. The original Second Count alleged lack of informed consent, the Fourth Count alleged CUTPA, and the Fifth Count alleged recklessness. The court addressed all three issues in its decision on that Motion to Strike. In the original Second Count the plaintiff alleged that the hospital failed "to inform her of the failure rate in interpreting pap smears nor the risk, benefits, and alternatives to the test." The Motion to Strike was granted on the following basis: "The plaintiff fails to allege that the customary standard of care of persons or hospitals similar to the defendants' is to obtain the patients' consent prior to performing the tests. In short, the plaintiff omits from her complaint the duty element of an informed consent cause of action." The parties have failed to brief the issue that the Second Count in the December 17, 1998 amended complaint corrects the deficiency as noted by said prior decision. Moreover, none of the parties have briefed whether or not this motion and/or CT Page 1504 pleadings raise questions of law that have already been presented on the record and determined. Breen v. Phelps, 186 Conn. 98, 99
(1982); McCarthy v. McCarthy, 55 Conn. App. 326, 332-34 (1999).
The plaintiff has caused this dilemma by inserting the following in her amended complaint:
1. By incorporating paragraph 14(e) of the First Count in the Second Count; "They failed to advise the Plaintiff and/or her physician of the possibility of a false negative interpretation," and by alleging in paragraph 23 of the Second Count; "The Defendant knew, or in the exercise of reasonable care should have known, of the significant number of false negative interpretations at Stamford Hospital."
2. By alleging informed consent language in the Second Count in paragraphs 24, 25, and 26 when the Second Count is labeled "Breach of Fiduciary Duty."
3. By failing to properly plead after the granting of the Motion to Strike the former Second Count of informed consent against the Stamford Hospital.
These problems were in existence and should have been addressed by a timely Request to Revise; "Separation of causes of action which may be united in one complaint when they are improperly in combined in one count . . ." P.B. 10-35(3). This court, therefore, grants the Motion to Strike as to the Second Count. This court invites the plaintiff to replead the Second Count either in Breach of Fiduciary Duty or Lack of Informed Consent, or both, in separate counts. The court then invites the defendant to deal with the resulting pleading by a proper Request to Revise before attempting to address any legal issues in another Motion to Strike.
II. Fourth Count alleging a violation of CUTPA.
The plaintiff's Fourth Count alleges, against the Stamford Hospital only, a violation of Connecticut Unfair Trade Practices Act (CUTPA). Paragraphs 1-26 of the Second Count were incorporated by reference in the Fourth Count. The Fourth Count then continues with 19 new paragraphs addressed to the statutory CUTPA claim. This court notes that the Motion to Strike the CUTPA count was already decided in the April 8, 1998 decision. The court stated, "The plaintiff's allegations impact the CT Page 1505 entrepreneurial or business aspect of medical services apart from the medical competence of the hospital. Therefore, count four of the plaintiff's complaint is legally sufficient. The Motion to Strike on count four of the complaint is denied." Normally this issue would have been ended by the April 8, 1998 decision. The Court found that the following three allegations in the Fourth Count appear to be entrepreneurial or business aspects of the medical services rendered by the Stamford Hospital; (1) "adopting policies designed to thwart the opportunity of a patient injured by its misrepresentations to determine if the defendant was negligent, specifically by refusing to allow pap smear slides to leave its facility when the patient seeks review by another medical provider to determine potential negligence"; (2) "This policy was designed with the intent of imposing significant additional cost upon a patient victim of negligence . . . when the defendant freely permits patients pap smear slides to leave its facility when it does not suspect the patient is contemplating a negligence claim;" and (3) "The Hospital developed this practice to prevent information regarding misinterpreted pap smear slides from being conveyed to the public in order to continue to represent itself as a first class medical facility and to encourage the public to continue to purchase it services and to deceive potential customers about the level of quality of its services." Haynes v. Yale-New Haven Hospital,243 Conn. 17, 38 (1997).
In the prior decision, the court examined the complaint to determine whether or not this was a CUTPA claim or just a recast of a medical malpractice claim, i.e., whether or not it impacts the entrepreneurial and business aspects of medical services. According to the Haynes decision and the allegations of CUTPA count, the denial of the Motion to Strike the CUTPA count was proper.
The memorandum of decision on the prior Motion to Strike was released on April 8, 1998. On August 4, 1998, the Supreme Court released its decision in Cornelio v. Stamford Hospital,246 Conn. 45 (1998). This involved the very same pap smear tests that were the subject of the instant lawsuit The very same parties were in both cases. In that case, the plaintiff commenced a replevin action to obtain possession of certain pathology slides of tissue specimens that had been obtained from her and analyzed in the course of her medical care by the Stamford Hospital. The Stamford Hospital then informed the plaintiff that it could not release the slides because they could not be duplicated. The hospital did CT Page 1506 agree to allow experts, retained by the plaintiff, to examine the slides at the hospital. At the time this replevin action was filed, it was contemplated that the plaintiff would file this instant medical malpractice action. The trial court granted the hospital's Motion for Summary Judgment and held that the plaintiff was not entitled to replevin of the slides. The Supreme Court affirmed, and in effect, found that the slides were under the control of the Stamford Hospital and that the plaintiff, Angela Cornelio, did not have a right of possession of pathology slides obtained and analyzed in the course of her medical care by the defendant, Stamford Hospital. Janicki v. Hospital of St.Raphael, 46 Conn. Sup. 204, 216-17 (2000).
This court, therefore, feels that it must revisit the April 8, 1998 Memorandum of Decision in light of the Supreme Court's later opinion. Addressing the three allegations of the CUTPA count in the original complaint, the trial court in April 1998 referred first to the hospital's right to adopt policies that refuse to allow pap smear slides to leave its facility. As a matter of law, such an allegation can no longer form the basis of an entrepreneurial or business violation in accordance with the August 4, 1998 Supreme Court decision. The second allegation was that this policy was designed with the intent of imposing significant additional cost upon a patient victim of negligence. This addresses the issue of pap smears leaving the hospital. Mrs. Cornelio has no right to have the pap smears leave the hospital without its consent. Those allegations of additional significant costs have been foreclosed by the 1998 Supreme Court decision. The Third allegation is that the hospital developed this practice to deceive the public and continue to represent itself as a first class medical facility and to encourage the public to continue to purchase its services and deceive potential consumers about the level of quality of its services. These are sufficient allegations of entrepreneurial or business aspects of medical services, as apart from medical competence of the hospital, but this allegation also relates back to the practice of the hospital not permitting its pap smear samples to be released from the hospital facility.
The trial judge who granted the Summary Judgment for the Stamford Hospital in the replevin action was the trial judge who later denied the Motion to Strike on April 8, 1998 in this lawsuit. As a trial judge he was not necessarily bound by his conclusion in the replevin action that there was no material issue of fact raised in the first case when considering the CT Page 1507 separate malpractice issues in the Motion to Strike. The Supreme Court's factual and legal conclusion of August 4, 1998 is now binding on this trial court.
 "Thus the language, legislative history and circumstances surrounding the enactment of §§ 20-7b through 20-7e and § 19a-490b manifest the legislature's intention that: (1) pathology slides constitute part of a patient's health record; (2) patients be given the right to examine and obtain copies of their hospital health records without first initiating a malpractice action; and (3) hospitals be permitted to retain possession of original health records to ensure, inter alia, that such records are available to the hospital in the event of a malpractice action. This statutory history raises two separate questions: (1) are pathology slides part of a patient's health record; (2) do pathology slides that cannot be duplicated fall withing a hospital's right to retain original health records? We conclude that both of these questions should be answered in the affirmative."
Cornelio v. Stamford Hospital, supra, 246 Conn. 58. It is the law of this case that Stamford Hospital owns the right of access to the pap smears and can determine who can obtain possession. As of April 8, 1998 this was not the law of the case. The defendant, Stamford Hospital can now determine when and if pap smears can leave the facility.
Since the underlying practice conforms with the law of the State of Connecticut as of August 4, 1998, this court, grants the Motion to Strike on the basis that the complaint no longer contains sufficient allegations of the entrepreneurial or business aspects of medical services. Cornelio v. StamfordHospital, supra, 246 Conn. 46.
III. Fifth Count alleging Lack of Recklessness.
In the Fifth Count of the December 17, 1998 amended complaint, the plaintiff alleges recklessness against the Stamford Hospital. The Fifth Count incorporates paragraphs 1-43 of the Fourth Count, which includes paragraphs 1-21 of the First Count, paragraphs12-26 of the Second Count and paragraphs 27-43 of the Fourth Count. The Fourth Count has already been stricken by this court in this decision. In the Fifth Count, the plaintiff merely adds one more paragraph, numbered 44, which provides as follows: "The aforementioned conduct of the Defendant constituted a reckless indifference to the rights of the Plaintiff and created an CT Page 1508 unnecessary and unreasonable risk of bodily injury to the Plaintiff."
This paragraph and this count were the subject of the Motion to Strike decided on April 8, 1998. The court struck the Fifth Count in its entirety on the basis that there were no specific allegations setting out the recklessness or wanton conduct. Nothing in the Fifth Count distinguishes it from the negligence count. This court agrees with that conclusion. The Motion to Strike the Fifth Count must be granted for two reasons: First, since paragraphs 27-43 of the Fourth Count are no longer in this case, the CUTPA allegations do not support the recklessness count, and second, the remaining allegations are nothing more than a negligence claim. Dubay v. Irish, 207 Conn. 518, 532-33
(1987); Brown v. Branford, 12 Conn. App. 106, 110 (1987); Sheimanv. Lafayette Bank and Trust Co., 4 Conn. App. 39, 45-46 (1985).
BY THE COURT.
TIERNEY, J..